**Terry DONOVAN, Plaintiff–Appellant,**

v.

**Timothy THAMES and Patrick Collura, Defendants–Appellees.**

No. 95–5718.

United States Court of Appeals, Sixth Circuit.

Argued May 21, 1996.

Decided Jan. 27, 1997.

Robert A. Arnold (argued and briefed), Sutton, Hicks & Lucas, Crestview Hills, KY, for Plaintiff–Appellant.

Frank A. Wichmann, Wichmann & Schaffer, Erlanger, KY, Henry L. Walker, II (argued and briefed), Brown, Todd & Heyburn, Covington, KY, for Defendants–Appellees.

Before KRUPANSKY, DAUGHTREY, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff/Appellant Terry Donovan appeals the district court's grant of summary judgment based on the doctrine of res judicata[1] in this 42 U.S.C. § 1983 case involving claims against Defendants/Appellees Timothy Thames and Patrick Collura of constitutional violations based on excessive force and arrest without probable cause. We affirm in part and reverse in part.

## I. BACKGROUND

In November 1991, the Erlanger Police Dispatcher received a 911 call reporting a disturbance in front of the residence of Donovan and his parents. Officers Thames and Collura were dispatched. When the officers reached the house, they requested consent to enter because they believed that Donovan had been in an argument with his mother. Donovan invited the officers to come inside the house, and his mother did not object. Donovan claims that everything was quiet when the officers arrived and that, after allowing the officers to enter the residence, he repeatedly asked them to leave. In contrast, the officers contend that the hostilities between the plaintiff and his mother were escalating. The officers claim that Donovan struck his mother with his elbow. Donovan denies this allegation and claims that any contact with his mother was accidental. Barbara Donovan, Terry's mother, testified that Donovan did not touch her.

Thames arrested Donovan and handcuffed him by placing him face down in a chair and positioning his knee in Donovan's back. Collura was present during the arrest. The officers assert that Donovan was resisting arrest and that they used only the degree of force necessary to effectuate the arrest. On the other hand, Donovan asserts that Thames used more force than was necessary. Donovan claims that he was thrown headfirst into the chair whereupon his head hit the wooden frame, that Thames caused him pain and injury by kneeing him in the back, and that Thames would not release him from this position. During her deposition, Donovan's mother also testified about the force Thames used to handcuff her son:

> He reached over and just snatched him and slung him into that chair. The chair is a—like a Victorian chair trimmed in, I guess, hard cherry wood. And when he slung him, his head struck the wood on the back of the chair, cracking it in two places.

> He then—somehow or another, his—when—well, when he got on his back, his right side was on the arm of the chair, which is also wood, and he got on his back. He put his knee in his back. He took his left arm and twisted it as far as he could up to his neck and was trying to cuff it, but Terry had on an enormous amount of clothes on that night, and he couldn't get the—he just couldn't get the cuff on.

J.A. at 132–33.

Donovan was charged in a state-court criminal action with domestic violence and abuse, resisting arrest, possession of marijuana, and possession of drug paraphernalia. In that case, Donovan's counsel moved to suppress the evidence recovered from the house, alleging that the officers obtained all

---

1. "The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n . 1, 79 L.Ed.2d 56 (1984). "Res judicata is often analyzed ... to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.... Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.* Although the district court employed the broader term "res judicata," we will consider whether either claim preclusion or issue preclusion bars Donovan's claims.

of the evidence after consent to enter the home had been withdrawn. After a suppression hearing, Judge Frank Trusty denied Donovan's motion to suppress and found, in a written Opinion and Order dated October 26, 1993, that the officers had probable cause to arrest Donovan pursuant to Kentucky Revised Statute § 431.005.[2] J.A. at 49–50. Donovan was tried by the Kenton County District Court and convicted of resisting arrest and the drug-related charges. However, Donovan was acquitted of the charge of domestic violence. Donovan filed this § 1983 action on November 23, 1992. The district court suspended discovery on March 2, 1993, pending resolution of the related criminal action, which had been filed in Kenton County District Court in Kentucky on November 25, 1991. Judge Trusty entered judgment in the state-court criminal action on November 8, 1993. Donovan did not appeal his convictions. On April 21, 1995, the U.S. district court judge granted the defendants' motion for summary judgment in the instant case.

## II. ANALYSIS

The Supreme Court has held that issues decided in a state-court criminal proceeding may preclude relitigation of the same issues in a subsequent § 1983 action in federal court. *Allen v. McCurry*, 449 U.S. 90, 102, 101 S.Ct. 411, 419, 66 L.Ed.2d 308 (1980). In *Allen,* the respondent had been convicted in a state-court criminal proceeding in which he had moved to suppress certain evidence on the ground that it had been obtained in violation of his Fourth Amendment rights. *Id.* at 92, 101 S.Ct. at 413–14. The trial court denied the motion to suppress, and the respondent subsequently brought a § 1983 action in federal court against the officers who had seized the evidence. *Id.* The Supreme Court held that the suit was barred by issue preclusion because the issue of a Fourth Amendment violation had been resolved against the respondent by the denial

of his motion to suppress in the state-court criminal trial. *Id.* at 105, 101 S.Ct. at 420–21. The Court reasoned that issue preclusion was mandated in this context by the federal full faith and credit statute, which provides that

> judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in courts of such State, Territory or Possession from which they are taken.

*Id.* at 96, 101 S.Ct. at 415–16 (quoting 28 U.S.C. § 1738). The *Allen* Court further reasoned that

> nothing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U.S.C. § 1738.... Section 1983 creates a new federal cause of action. It says nothing about the preclusive effect of state-court judgments.

*Allen,* 449 U.S. at 97–98, 101 S.Ct. at 416–17. Moreover, the Court noted that the legislative history of § 1983 does not suggest that Congress intended to restrict the applicability of the traditional doctrines of preclusion. *Id.* at 98, 101 S.Ct. at 416–17. Rather, the Court felt that the legislative history as a whole lent "only the most equivocal support to any argument that, in cases where the state courts have recognized the constitutional claims asserted and provided fair procedures for determining them, Congress intended to override § 1738 or the common-law rules of collateral estoppel and res judicata." *Id.* at 99, 101 S.Ct. at 417. The Court concluded that because "repeals by implication are disfavored ... much clearer support than this would be required to hold that § 1738 and the traditional rules of preclusion are not applicable to § 1983 suits." *Id.* Thus, *Allen*

---

**2.** Section 431.005(1) of Kentucky Revised Statutes provides that

(1) A peace officer may make an arrest:

(c) Without a warrant when he has probable cause to believe that the person being arrested has committed a felony; or

(d) Without a warrant when a misdemeanor, as defined in KRS 431.060, has been committed in his presence....

established that issues actually litigated in a state-court proceeding are entitled to preclusive effect in a subsequent federal § 1983 suit to the extent provided by the law of preclusion in the state where the judgment was rendered.

We recognize that *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), requires a different approach where a plaintiff chooses to proceed initially in a federal forum and the federal court forces the plaintiff to proceed first in state court based on abstention. *Id.* at 415, 84 S.Ct. at 464–65 (applying abstention doctrine announced in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645–46, 85 L.Ed. 971 (1941)). In *England*, plaintiffs filed a lawsuit in federal court claiming that a state statute violated their constitutional rights.[3] *Id.* at 412–13, 84 S.Ct. at 463–64. The federal court invoked, sua sponte, the doctrine of abstention, reasoning that a state-court decision that the statute did not apply to the plaintiffs would render the federal constitutional question moot, but the federal court simply stayed its proceedings until the state courts had an opportunity to determine the underlying issues and retained jurisdiction to take any necessary steps. *Id.* at 413, 84 S.Ct. at 463–64. The plaintiffs explicitly recited in their state court pleadings that they brought their state proceeding pursuant to the abstention order, a copy of which was appended to their petition. *Id.* at 414 n. 3, 84 S.Ct. at 464 n. 3. Once in state court, the plaintiffs submitted both the state law and federal law questions, both of which were decided against the plaintiffs. *Id.* The plaintiffs made no attempt to appeal the state court determination to the Supreme Court. *Id.* at 414 n. 4, 84 S.Ct. at 464 n. 4. Faced with an appeal from the U.S. district court's subsequent grant of the defendants' motion to dismiss, the Supreme Court held that "a plaintiff who properly reserved the federal issue by informing the state courts of his intention to return to federal court, if necessary, was not precluded from litigating the

federal question in federal court." *Allen*, 449 U.S. at 101 n. 17, 101 S.Ct. at 418 n . 17 (explaining *England*, 375 U.S. at 415, 84 S.Ct. at 464–65). The *England* Court objected "to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims." *England*, 375 U.S. at 415, 84 S.Ct. at 464. The *Allen* Court explained that the holding in *England* depended entirely on the purpose of abstention in the situation presented:

> Where a plaintiff properly invokes federal-court jurisdiction in the first instance on a federal claim, the federal court has a duty to accept that jurisdiction.... Abstention may serve only to postpone, rather than to abdicate, jurisdiction, since its purpose is to determine whether resolution of the federal question is even necessary, or to obviate the risk of a federal court's erroneous construction of state law.

*Allen*, 449 U.S. at 102 n. 17, 101 S.Ct. at 418 n. 17; *see also Wicker v. Board of Educ.*, 826 F.2d 442, 447 (6th Cir.1987) (applying *England* ).

In the instant case, in contrast to *England*, the state court criminal action was filed first, indeed almost a full year earlier. There was, moreover, no attempt to reserve federal law issues from state court determination, nor would such an attempt be likely given the consequences of the state-court proceeding. Although it has been argued that "[a] state criminal defendant cannot be held to have chosen 'voluntarily' to litigate his Fourth Amendment claim in the state court," *Allen*, 449 U.S. at 115, 101 S.Ct. at 426 (Blackmun, J., dissenting), this view has not prevailed in the Supreme Court. Thus, we are not faced with the situation present in *England;* instead, we apply *Allen* to the situation presented in this case.

■ Pursuant to *Allen*, we begin by analyzing Kentucky law on claim preclusion and

---

3. The plaintiffs, graduates of schools of chiropractics who sought to practice in Louisiana without complying with the educational requirements of the Louisiana Medical Practice Act,

sued the Louisiana State Board of Medical Examiners in federal court, seeking an injunction and a declaration that the Act violated the Fourteenth Amendment as applied to them. *Id.*

issue preclusion. Under Kentucky law, res judicata, or claim preclusion, "may be used to preclude entire claims that were brought or should have been brought in a prior action, while the doctrine of collateral estoppel [or issue preclusion] only applies to issues actually litigated." *City of Covington v. Board of Trustees of Policemen's and Firefighters' Retirement Fund,* 903 S.W.2d 517, 521 (Ky. 1995). Moreover, Kentucky has approved the use of non-mutual collateral estoppel, i.e., issue preclusion may apply against a party to a prior suit even though the parties in the subsequent law suit are not identical to the parties in the prior action. *Id.* at 522 (citing *Sedley v. City of West Buechel,* 461 S.W.2d 556 (Ky.1970)). In addition, the Kentucky Supreme Court has made clear that the application of preclusion must be "based on rules of justice and fairness" rather than "an automatic imposition of a doctrine." *City of Covington,* 903 S.W.2d at 522; *see also Wicker,* 826 F.2d at 450–51 (summarizing Kentucky law regarding the preclusive effect in federal court of a prior state-court decision).

The Kentucky Court of Appeals has held that "under proper circumstances, a criminal conviction may be used for purposes of collateral estoppel in later civil proceedings." *Gossage v. Roberts,* 904 S.W.2d 246, 248 (Ky. Ct.App.1995) (citing *Roberts v. Wilcox,* 805 S.W.2d 152 (Ky.Ct.App.1991)). Relying on *Sedley,* the *Gossage* court summarized Kentucky law on issue preclusion:

> The general rule is that a judgment in a former action operates as an estoppel only as to matters which were necessarily involved and determined in the former action, and is not conclusive as to matters which were immaterial or unessential to the determination of the prior action or which were not necessary to uphold the judgment.

*Gossage,* 904 S.W.2d at 248–49 (quoting *Sedley,* 461 S.W.2d at 558–59). Against this backdrop, we review the district court's grant of summary judgment against Donovan.

### A. Excessive Force Claim Under § 1983

■ The district court granted the defendants' motion for summary judgment on Donovan's § 1983 excessive force claim because it found that Donovan's state law conviction for resisting arrest was "*res judicata*" and that "[i]n light of the fact that plaintiff was resisting arrest, it cannot be said that the force employed by the officers, as reflected in the evidence, clearly violated his constitutional rights." District Court Op., at 4; J.A. at 22. At the hearing on the motion for summary judgment, the district court judge stated that the judge in the state-court criminal action did not make any finding regarding excessive force. J.A. at 112. Under Kentucky law, the offense of resisting arrest does not require a finding that the police officers did not use excessive force in effecting the arrest. Ky.Rev.Stat. Ann. § 520.090 (Banks–Baldwin West 1996). Therefore, a determination of the issue of excessive force was not "necessary to uphold the judgment." *See Gossage,* 904 S.W.2d at 248.[4] Because the issue of the officers' use of excessive force was not essential to the conviction for resisting arrest and because we have no evidence that the issue of excessive force was actually litigated in the state-court criminal proceeding, we hold based on Kentucky law that issue preclusion does not restrict Donovan's excessive force claim in federal court. Furthermore, since we have no indication that Donovan could have raised his § 1983 excessive force claim as a separate cause of action in the state-court criminal proceeding, we hold that his present excessive force claim cannot be barred by claim preclusion.[5] Accordingly, we reject the dis-

**4.** We acknowledge that Donovan possibly could have raised the defense that the officers "used more force than is reasonably necessary to effect the arrest so that his conduct constitutes an assault on the person arrested." Ky.Rev.Stat. Ann. § 520.090 Commentary (Banks–Baldwin West 1996). The language preceding the cited portion of this commentary suggests that a defense based on the officers' use of excessive force might be available only in conjunction with a defense that the arrest was unlawful, which is

generally not permitted. *See id.* Nonetheless, Kentucky law requires that an issue have been actually litigated, and determined, before issue preclusion can apply.

**5.** Even if Donovan could have raised his § 1983 excessive force claim in the state-court criminal proceeding, we would not extend *Migra* to apply claim preclusion here. In *Migra,* the Supreme Court held that a plaintiff, who chose to bring a claim in state court challenging her termination

trict court's conclusion that Donovan's excessive force claim is barred by any form of the doctrine of res judicata. .

We reached a similar conclusion in *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194 (6th Cir.1987), where a civil rights plaintiff had been arrested for failure to appear at a custody hearing and served approximately ten days in jail before the charge was dismissed. *Id.* at 197. The magistrate judge found that collateral estoppel principles precluded plaintiff's subsequent § 1983 claim for false imprisonment, reasoning that since the plaintiff " 'had every opportunity to litigate the issue of her allegedly false arrest and imprisonment and/or malicious prosecution and/or abuse of process ... at the state court hearing ... she should be collaterally estopped from asserting same in the present section 1983 action.' " *Id.* Applying Kentucky law, we held that "res judicata or claim preclusion [was] not applicable ... because plaintiff's section 1983 action is not the same cause of action as the state's criminal case against her," and collateral estoppel or issue preclusion did not preclude the plaintiff's action "because neither the validity of the summons nor the legality of the arrest was litigated or decided in the prior state court proceeding." *Id.* at 197. Similarly, in the instant case, because the issue whether the officers used excessive force was not litigated in Donovan's state-court criminal trial, his conviction for resisting arrest does not preclude his § 1983 excessive force claim.

Other circuits have likewise concluded that a conviction for resisting arrest does not preclude a § 1983 claim for excessive force.

In *Hernandez v. City of Los Angeles*, 624 F.2d 935 (9th Cir.1980), the Ninth Circuit reversed the trial court's grant of summary judgment in favor of a § 1983 defendant, holding that the § 1983 plaintiff's conviction for resisting arrest did not estop him from arguing that the police used excessive force in making the arrest. *Id.* at 938. In *Hernandez*, the jury had been "instructed that they should find [the § 1983 plaintiff] not guilty if the officers used unreasonable or excessive force in making the arrest and if [the plaintiff] used only reasonable force to protect himself." *Id.* at 937.[6] · Nonetheless, the Ninth Circuit pointed out that the "jury could have found either that the self-defense instruction was irrelevant to the resisting arrest charge or that both [the plaintiff] and the police officers used excessive force." *Id.* at 937–38. Therefore, the jury did not necessarily make a finding about the conduct of the officers. *See also Courtney v. Reeves*, 635 F.2d 326, 329 (5th Cir.1981) (holding that civil rights plaintiff was not collaterally estopped under *Allen v. McCurry* from raising an excessive force cause of action even though he admitted in a prior proceeding that he assaulted a police officer).

Similarly, in *Vazquez v. Metropolitan Dade County*, 968 F.2d 1101 (11th Cir.1992), a jury convicted Vazquez, the civil rights plaintiff, of "culpable negligence," which meant that the jury had concluded that the plaintiff's "act of shooting six bullets into the front door of his home constituted flagrant disregard for the safety of others." *Id.* at 1108. Nonetheless, the Eleventh Circuit held that the plaintiff's conviction for culpa-

---

from employment on state law grounds, could be barred from raising a § 1983 claim challenging the same termination in federal court in a subsequent action. 465 U.S. at 84, 104 S.Ct. at 897–98. However, the Court focused on the fact that the plaintiff "was in an offensive posture in her state court proceeding, and could have proceeded first in federal court had she wanted to litigate her federal claim in a federal forum," and distinguished the plaintiff in *Allen*, who had "first litigated his constitutional claim in state court in the posture of his being a defendant in a criminal proceeding." *Migra*, 465 U.S. at 85 n. 7, 104 S.Ct. at 898 n. 7.

**6.** · *Compare Mink v. Weglage*, 614 F.Supp. 93, 95 (S.D.Ohio 1985). In *Mink*, the court distinguished the instruction tendered in *Hernandez*

from its own jury instruction regarding the offense of resisting arrest:

> In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized Police Officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances.... If you find that the defendant's arrest was without a reasonable basis, you may not find him guilty of the charge of resisting arrest.

*Id.* Thus, in *Mink*, by convicting the defendant of the resisting arrest charge, the jury necessarily found that the officers had not used excessive force.

ble negligence did not resolve the question whether the officers at whom the plaintiff shot used force beyond what was reasonably necessary under the circumstances. *Id.* at 1109. The court reasoned that:

> The jury's rejection of Vazquez's defense of justification reflected its belief that Vazquez's actions in shooting the gun did not constitute a reasonable response to the situation facing him. The jury's verdict, however, in no way ruled on the propriety of the actions of the ... police officers after Vazquez committed his act of culpable negligence.

*Id.* at 1108. Likewise, in *Williams v. Liberty*, 461 F.2d 325 (7th Cir.1972), the Seventh Circuit held that a § 1983 plaintiff's claim of police brutality was not estopped by the plaintiff's conviction of battery upon the civil defendant police officer:

> [W]e are unable to see why an officer who is attacked by a prisoner could not use more force than reasonably necessary in defending himself, and be subject to liability for the excessive force.

*Id.* at 328.

■ Accordingly, we reverse the district court's decision granting summary judgment on the excessive force claim because neither issue preclusion nor claim preclusion bars Donovan's § 1983 claim that the officers used excessive force in violation of his Fourth Amendment rights. To hold otherwise would "give law enforcement authorities carte blanche to respond as they please to criminal behavior." *Vazquez*, 968 F.2d at 1109. We further hold that factual disputes regarding the degree of force used to subdue and arrest Donovan prevent our consideration of the defendants' argument that we should affirm the grant of summary judgment on the separate basis of qualified immunity. *See John-*

*son v. Jones,* —— U.S. ——, ——, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995) (holding that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial").

### B. Section 1983 Claim for Arrest Without Probable Cause

Donovan also argues that the district court erred by granting summary judgment based on qualified immunity for his claim that the officers arrested him without probable cause. Donovan contends that the district court incorrectly applied the standard for malicious prosecution although Donovan's claim was for arrest without probable cause. During the hearing on the defendants' motion for summary judgment, the district court stated that a claim that the arrest was without probable cause was the same as a malicious prosecution claim. J.A. at 99. The district court held that the law was not clearly established as to whether a § 1983 action claiming malicious prosecution could be maintained and therefore found qualified immunity. District Court Op. at 3–4; J.A. at 21–22 (citing *Albright v. Oliver,* 510 U.S. 266, 267– 771, 273–75, 114 S.Ct. 807, 810–11, 813–14, 127 L.Ed.2d 114 (1994)) (plurality opinion) (holding that claim for malicious prosecution cannot be brought in a substantive due process claim under the Fourteenth Amendment but expressing no opinion regarding whether petitioner's claim would succeed under the Fourth Amendment).

■ However, Donovan's claim was that the officers arrested him without probable cause.[7] Compl. ¶ 7, J.A. at 2. It is clearly

---

7. Malicious prosecution is distinct from false arrest. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 116–17 (2d Cir.1995) (distinguishing between malicious prosecution and false arrest because malicious prosecution requires a deprivation of liberty pursuant to the legal process), *cert. denied,* —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). Under Kentucky law, one of the elements of a malicious prosecution claim is "the institution or continuation of original judicial proceedings;" therefore, a claim for warrantless arrest without probable cause cannot be

brought as a malicious prosecution claim. *See McMaster v. Cabinet for Human Resources,* 824 F.2d 518, 520 (6th Cir.1987) (stating elements of a claim for malicious prosecution under Kentucky law and explaining that "where a section 1983 claim is essentially for deprivation of civil rights through malicious prosecution, we look to common law elements of a malicious prosecution claim in judging the merits of the section 1983 action"); *Dunn v. Tennessee,* 697 F.2d 121, 125 n. 4 (6th Cir.1982) (applying definition of malicious prosecution of state in which claim arose),

established that an arrest without probable cause violates the Fourth Amendment. *Beck v. Ohio*, 379 U.S. 89, 90–91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). "The Supreme Court has held that the test for whether an arrest is constitutionally valid is 'whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.' " *United States v. Dotson*, 49 F.3d 227, 229 (6th Cir.) (quoting *Beck*, 379 U.S. at 91, 85 S.Ct. at 225), *cert. denied*, —— U.S. ——, 116 S.Ct. 141, 133 L.Ed.2d 87 (1995).

■ In Donovan's suppression hearing at which he sought to suppress evidence obtained by officers after his arrest, the Kentucky trial court determined that Donovan's arrest was valid under Kentucky Revised Statute § 431.005 because the officers had probable cause to believe that Donovan had assaulted his mother. State Court Op. at 7–8; J.A. at 49–50. This finding was essential to the trial court's denial of Donovan's motion to suppress. Donovan was given a full and fair opportunity to litigate the validity of his arrest during the hearing on the motion

to suppress and could have appealed his conviction.[8] Accordingly, under *Allen* and the Kentucky law of issue preclusion, Donovan is precluded from relitigating the issue of the validity of his arrest because the state court already determined that the officers had probable cause to arrest Donovan and that the arrest was valid. The federal court is bound by this state-court determination. Thus, Donovan cannot prove that the officers arrested him without probable cause. Hence, we affirm on the ground of issue preclusion the district court's grant of defendants' motion for summary judgment on Donovan's § 1983 claim for arrest without probable cause.

## III. CONCLUSION

We **AFFIRM** the district court's grant of summary judgment with respect to Donovan's claim for arrest without probable cause, because the doctrine of issue preclusion applies. However, we **REVERSE** the district court's grant of defendants' motion for summary judgment with respect to Donovan's excessive force claim, because it is not precluded by Donovan's conviction for resisting arrest and because material issues of fact prevent us from affirming on the alternative

*cert. denied sub nom. Wyllie v. Dunn*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). Moreover, *Albright* left open the question whether a claim for malicious prosecution could be brought under the Fourth Amendment, but it is well-settled that the Fourth Amendment forbids unreasonable searches and seizures, including arrests made without probable cause. *E.g., Brinegar v. United States*, 338 U.S. 160, 164 & n. 4, 69 S.Ct. 1302, 1305 & n. 4, 93 L.Ed. 1879 (1949). Although Donovan's counsel agreed with the district court's suggestion at the hearing on the motion for summary judgment that a malicious prosecution claim was the same as a claim for arrest without probable cause, J.A. at 99, we will assume that counsel did not waive this issue and resolve Donovan's false arrest claim on preclusion grounds.

8. The Supreme Court has noted that a conviction for the crime of resisting arrest, where "defined as intentionally preventing a peace officer from effecting a lawful arrest," would preclude a subsequent suit under § 1983 for violation of the right to be free from unreasonable seizures because proof of the lawfulness of the arrest is an element of the crime. *Heck v. Humphrey*, 512

U.S. 477, 486 n. 6, 114 S.Ct. 2364, 2373 n. 6, 129 L.Ed.2d 383 (1994). However, in Kentucky, conviction for resisting arrest does not require proof of a lawful arrest:

> (1) A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer, recognized to be acting under color of his official authority, from effecting an arrest of the actor or another by:
>> (a) Using or threatening to use physical force or violence against the peace officer or another; or
>> (b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

Ky.Rev.Stat.Ann. § 520.090(1) (Banks–Baldwin West 1996). In fact the commentary to this statute provides that generally "the unlawfulness of an arrest may not be raised as a defense to a prosecution under this section." Thus as noted above in text, in this case it is the determination of the validity of the arrest made by the state court after the hearing of the motion to suppress evidence, rather than the conviction for resisting arrest, that provides the basis for issue preclusion regarding the issue of false arrest.

ground that the officers are entitled to qualified immunity.