KENNEDY, J., delivered the opinion of the court, in which DAVID A. NELSON, J., joined. CLAY, J. (pp. 1078-1092), delivered a separate dissenting opinion.
OPINION
KENNEDY, Circuit Judge.
Plaintiff, Joey Leon Smith, appeals from the District Court’s order granting summary judgment on behalf of the defendants in this action under 42 U.S.C. § 1983 and § 1985 for false arrest, false imprisonment, malicious prosecution, and conspiracy to violate plaintiffs civil rights. For the foregoing reasons, *1073 we AFFIRM the judgment of the District Court.
I.
In the early morning hours of March 19, 1994, the Repeat Offender Unit of the Knoxville Police Department was conducting a buy/bust operation in the vicinity of the Green Hills Apartments, a housing project in Knoxville, Tennessee. Approximately fifteen to twenty officers, including all six of the defendant officers, were assigned to participate in the buy/bust operation. During the operation, a member of the unit attempted to engage in a drug transaction with an individual in the parking lot of the apartment complex. When the individual attempted to run off with the officer’s money, other members of the unit quickly moved in and apprehended the suspect. During this operation, plaintiff, Joey Leon Smith,[1] had parked his car at the Green Hills Apartments to deliver ear keys to his cousin who lived at Green Hills. Plaintiff parked his 1992 Dodge Stealth, valued at $40,000, approximately ten feet from where the officers ultimately apprehended the suspect who attempted to flee with the officer’s money. Plaintiff’s vehicle caught the attention of several officers involved in the operation for a variety of reasons. The car was unoccupied but the engine was running, the headlights were on, the doors were unlocked, the radio was turned on, and it was parked diagonally between two spaces.[2] The fact that the engine was running arose suspicion as stolen vehicles are frequently abandoned with their engines running because the ignitions have been tampered with during the theft process. Furthermore, Green Hills Apartments was known to the officers as a dumping ground for stolen vehicles and an area from which they had recovered many stolen vehicles. While officers Thornburg; Slagle, and Line approached plaintiff’s vehicle, a vocal crowd gathered around the area where the suspect was being arrested! In addition,, police identified by markings on their jackets and caps surrounded the area.
Officer Thornburg approached the driver’s side door, and Officer Line.approached the passenger side door. Meanwhile, Officer Slagle returned to his vehicle to run a license plate check to determine if the vehicle had been reported stolen. Officer Thornburg opened the unlocked driver’s side door, knelt down, turned down the stereo, and looked at the ignition to see if it had been .tampered with. Officer Line peered through the passenger side window at the steering column to determine whether it had been hotwired.
■ Plaintiff, in his cousin’s apartment during these events, was alerted by a silent pager alarm that someone had opened the door to his car. Plaintiff ran from the apartment and in approximately 2.2 seconds reached his car in the parking lot. Plaintiff claims he saw in his ear only someone dressed completely in black, stretched out across the front seat with his feet protruding from the driver’s door and his eyes and hands in the area of the glove compartment. Plaintiff denies he saw anyone, wearing a jacket, vest, or cap marked, “POLICE.”
Plaintiff reached into his car and grabbed Officer Thornburg by the collar of his shirt and the seat of his pants, lifted him up, and pulled him out of .his car.[3] A surprised Thornburg turned around and struck plaintiff in the mouth. Plaintiff and Thornburg fell to the ground and a struggle ensued. According to plaintiff, several unidentified officers joined the altercation and hit him in the back and shoulder with billy clubs and flashlights while shouting racial epithets at him. Plaintiff was eventually handcuffed and placed in the back of a squad car while dogs sniffed for drugs in plaintiff’s vehicle. Plaintiff was charged with, assaulting Officer Thornburg and, at a preliminary hearing, the *1074 charges were bound over to the Knox County-Grand- Jury; the Grand Jury did not return an indictment ■ and the charges were dismissed.
As a result of " these events, on March 17, 1995, plaintiff filed suit in state court against the defendants-under 42 U.S.C. § 1983 and § 1985 alleging constitutional violations and seeking to recover for personal injuries and property damages resulting from his arrest, the search of his vehicle, and his subsequent prosecution. The action was removed to the United States District Court for the Eastern District of Tennessee and each defendant moved for summary judgment. On September 16, 1996, the District Court entered an order granting summary judgment on all of plaintiffs claims except for his state law claims for assault and battery against defendants Thornburg, Slagle and Line[4] which were remanded to state court.[5] Plaintiff appeals from the order granting summary judgment to the defendants.[6]
II.
Our standard of review of a grant of summary judgment is de novo; we use the same test used by the District Court. See Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). We view the evidence in the light most favorable to the nonmoving party to determine whéther a genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment is proper if the evidence “‘show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.’” See Fed.R.Civ.P. 56(c); Canderm Pharmacol, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988)(quoting Fed.R.Civ.P. 56(e)).
III.
A. Fourth Amendment Violations: 1. Probable Cause to Search Plaintiffs Vehicle
Plaintiff first asserts that the District Court erred in concluding that the defendants did not violate his Fourth Amendment rights because probable cause existed to search his vehicle to determine whether it was stolen. Pursuant to the automobile exception to the warrant requirement, an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime. See California v. Carney, 471 U.S. 386, 390-94, 105 S.Ct. 2066, 2068-71, 85 L.Ed.2d 406 (1985); United States v. Wright, 16 F.3d 1429, 1437 (6th Cir.1994). We define probable cause as “reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.” United States v. Bennett, 905 F.2d 931, 934 (6th Cir.1990). Probable cause exists when there is a “‘fair probability that contraband or evidence of a crime will be found in a particular place.’ ” Wright, 16 F.3d at 1437 (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). Determining whether probable cause existed at the time of the search is a “ ‘commonsense, prac- *1075 tieal question’ to be judged from the ‘totality-of-the-circumstances.’ ” Id. (quoting Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2338, 76 L.Ed.2d 527 (1983)). In determining whether probable cause exists, we may not look to events that occurred after the search or to the subjective intent of the officers; instead, we look to the objective facts known to the officers at the time of the search. See United States v. Ferguson, 8 F.3d 385, 391-92 (6th Cir.1993)(ew banc).
We conclude that probable cause existed to search plaintiff’s readily mobile vehicle due to the facts known to the officers at the time. Those facts were as follows: (1) an unoccupied expensive ear was haphazardly parked at 12:40 a.m. in a high crime area; (2) the engine was running; (3) the headlights were on; (3) the doors were unlocked; (4) the radio was turned on; (5) stolen vehicles are frequently abandoned with their engines running because the ignitions have been tampered with during the theft process; (6) Green Hills Apartments was known to the officers as a dumping ground for stolen vehicles and an area from which they had recovered many stolen vehicles; (7) the Dodge Stealth is a frequently stolen vehicle; and (8) the unlocked and running, car was parked only a few feet from' a drug bust and within easy reach of any member of the crowd which gathered. Under these circumstances, the officers had probable cause to believe the Stealth may have been a stolen vehicle and, thus, enter the vehicle to determine whether it had been tampered with or to determine the identity of the owner. There is a dispute of fact regarding whether Officer Thornburg opened the glove compartment of Smith’s vehicle during his search. Examining the facts in a light most favorable to plaintiff, we assume that Thornburg did open the glove compartment. However, we conclude that Thornburg was justified in doing so in order to assess the identity of the owner of the car. Common sense dictates that a cursory inspection of a vehicle’s glove compartment may provide information from which an officer could determine the owner of the vehicle.
Plaintiff, however, stresses that his vehicle was on private, not public property, and thus police officers could not conduct a warrant-less search of his automobile. In support of his contention that his vehicle was parked on private property, plaintiff submitted the affidavit of an employee of the Engineering Department of the City of Knoxville who attested that the parking area for Green Hills Apartments is. private property. However, both plaintiff and the officers believed that the car was parked on public property.
Assuming that the complex parking lot is private property and that the distinction changes the Fourth Amendment analysis under the facts of this case, we conclude that the search of the vehicle was nevertheless lawful. First, exigent circumstances permitted the officers to conduct a warrantless examination of a vehicle that was unlocked and running in an area where a crowd had gathered. In only a matter of seconds, an individual could have taken the car or the car could have injured any member of the crowd or a police officer had it slipped out of gear. It would have been unreasonable to expect the officers to determine first whether the property, appearing to be public even to the plaintiff, was instead private property and to then seek a warrant upon learning that the property was indeed private. .
Second, the manner in which plaintiff parked his car violated section 55-8-162 of the Tennessee Code which provides:
No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway.
Tenn.Code Ann. § 55-8-162. Under the community earetaking function enunciated by the Supreme Court in Cady v. Dombrowski 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), we conclude that officers were entitled to enter the car without a warrant in order to protect themselves and the public from the danger created by the manner in which plaintiffs car was left unattended. See Dombrowski 413 U.S. at 448, 93 S.Ct. at 2531 (warrantless search of an automobile permissible where police suspected the car contained a gun and was vulnerable to intru *1076 sion); see also United States v. Rohrig, 98 F.3d 1506 (6th Cir.1996)(warrantless entry into house permitted in order to abate the ongoing nuisance of loud music). We, thus, cannot conclude that their actions were unreasonable under the Fourth Amendment.
Lastly, even if we were to assume that a warrantless search of the vehicle on private property was unlawful under the Fourth Amendment, we would conclude that the officers’ reasonable mistake of fact in presuming that the property was public would be protected by qualified immunity. See Pray v. City of Sandusky, 49 F.3d 1154, 1159-62 (6th Cir.1995)(officers’ reasonable mistake in entering residence other than the one authorized by the search warrant was protected by qualified immunity until the point when officers knew or should have known a mistake had been made).
For all of these reasons, the District Court correctly concluded that the defendants did not violate plaintiffs Fourth Amendment rights.
2. Probable Cause to Arrest Plaintiff/False Imprisonment
Plaintiff also alleges the defendants violated his Fourth Amendment rights when they arrested him for assault without probable cause.[7] Section 39-13-101 of the Tennessee Code defines assault as either:
(1) Intentionally, knowingly or recklessly caus[ing] bodily injury to another;
(2) intentionally or knowingly causing] another to reasonably fear imminent bodily injury; or
(3) Intentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.
Tenn.Code Ann. § 39-13-101. We reject plaintiffs first argument that his conduct did not fall within any of the definitions of assault set forth above.- We have little doubt that grabbing Officer Thornburg by the shirt and pants and pulling him out of the car constitutes an assault under § 39-13-101(3). Plaintiff contends, however, that he had an absolute right under § 39-ll-614(a) of the Tennessee Code to use force against Officer Thornburg in order to protect his property. That section provides:
(a) A person in lawful possession of real or personal property is justified in threatening or using force against another when and to the degree it is reasonably believed the force is immediately necessary to prevent or terminate the other’s trespass on the land or unlawful interference with the property.
Tenn.Code Ann. § 39-ll-614(a). In order to determine whether the warrantless arrest was constitutional under the Fourth Amendment, we must determine whether probable cause existed for the arrest. The question we must answer is “ ‘whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had .committed or was committing an offense.’ ” Donovan v. Thames, 105 F.3d 291, 298 (6th Cir.1997)(quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)).
We disagree with plaintiffs contention that defendants did not have probable cause to arrest him for assault because he had a right to use force to protect his property pursuant to § 39-ll-614(a). Under the Tennessee provision, an owner of property may use that force which is immediately necessary to prevent or terminate a trespass on the land or unlawful interference with the property. Because we have concluded that Officer Thornburg was lawfully inside of plaintiffs vehicle) Officer Thornburg was not unlawfully interfering with plaintiffs property. Furthermore, although plaintiff contends he never saw any of the marked police uniforms or Thornburg’s police jacket, the facts and' circumstances within the knowledge of the arresting officers were that plaintiff *1077 knowingly pulled a police officer with force out of the vehicle thereby committing an assault upon a police officer. In determining whether probable cause to arrest exists, the knowledge of the arresting officers, not the suspect, is’determinative. Under these circumstances, the officers could have reasonably believed that § 39-ll-614(a) would not apply where an identified police officer, in the vicinity of fifteen to twenty other identified police officers is, without warning,[8] pulled out of a vehicle he is lawfully inspecting to determine whether it is stolen.
Thus, the District Court properly concluded that the facts known to the officers were sufficient to warrant a prudent officer in believing that plaintiff had committed an offense.[9]
B. Malicious Prosecution
Plaintiff further contends that the District Court erred in granting summary judgment for the defendants on his claim for malicious prosecution of the assault charge against him. The District Court dismissed the claim on the ground that reasonable minds could not differ as to whether plaintiff committed an assault upon Officer Thornburg under the definition set forth in § 39-13-101(a)(3) of the Tennessee Code. While we agree that this claim was properly dismissed because there was probable cause to arrest plaintiff, we arrive at this conclusion for an additional reason not articulated by the District Court.
The law of our Circuit provides that where “the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action.” Coogan v. City of Wixom, 820 F.2d 170, 175 (6th Cir.1987).
In the instant case, a preliminary hearing was .held in the Knox County General Sessions Court on July 1, 1994. At that hearing, plaintiffs counsel examined several witnesses, including Officer Thornburg and the plaintiff and, at the conclusion of the hearing, plaintiffs counsel moved to dismiss the assault charge asserting that the use of force in defense of plaintiffs property was justified under § 39-11-614 of the Tennessee Code. Despite plaintiffs reliance on § 39-11-614, the court ruled that probable cause existed to bind over the assault charge to the grand jury. Thus, because plaintiff had a full and fair opportunity to litigate whether probable cause existed to maintain an assault charge against him,[10] he is barred from relit-igating that issue in this § 1983 action.
*1078 C. 42 U.S.C. § 1985(3) Conspiracy
Plaintiff also brought an action under 42 U.S.C. § 1985(3) alleging a conspiracy by the defendant police officers to deprive him of the equal protection of the laws. To maintain a cause of action under § 1985(3), a plaintiff must establish the following four elements:
(1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.
Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir.1994), cert. denied, 514 U.S. 1066, 115 S.Ct. 1698, 131 L.Ed.2d 560 (1995). The plaintiff further must demonstrate that the conspiracy was motivated by a class based animus, such as race. Id.; see also Collyer v. Darling, 98 F.8d 211, 233 (6th Cir.1996), cert. denied, — U.S. -, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997).
The District Court concluded there was a total absence of any evidence suggesting that the defendant officers discriminated against plaintiff because he was black. While, for purposes of this motion we assume that racial epithets, were uttered at plaintiff by someone after he grabbed Officer Thorn-burg,[11] we nevertheless conclude that .there is a noticeable absence of any evidence of a conspiracy to deprive plaintiff of his constitutional rights. Plaintiff has introduced no evidence that defendants acted in concert or in furtherance of a common objective. In fact,' the circumstances evince an occurrence of events much too quick to suggest that a conspiracy to deprive the plaintiff of his constitutional rights on the basis of his race was orchestrated. Officers did not even know the identity or race of the plaintiff until after Thornburg had entered the vehicle and after Thornburg was assaulted by plaintiff. In the absence of any evidence that the defendants agreed to deprive plaintiff of his constitutional rights, we conclude that the District Court properly granted summary judgment on behalf of the defendants on plaintiffs § 1985(3) claim.[12]
IV.
For the foregoing reasons, the judgment of the District Court is AFFIRMED.

. Plaintiff is African-American and a professional football player with the New York Giants.

. The parties dispute whether the windows were rolled down and whether the music was loud enough to be heard outside of the car.

.Officer Thornburg alleges plaintiff also struck him in the head several times. However, because plaintiff denies striking him and admits to only grabbing Thornburg by the shirt and pants, we view the evidence in the light most favorable to plaintiff. There is no material issue of fact that plaintiff grabbed Thornburg by the shirt and pants and pulled him from the car.

.Plaintiff moved for a non-suit of his claims against defendants Claiborne, Trentham, and Fortner. The District Court denied plaintiff's motion to take a non-suit against these defendants because it ruled against plaintiff on the merits of the motion for summary judgment. The court also dismissed with prejudice the state claims against these three defendants because there was no evidence Claiborne, Trentham, or Fortner were involved in the search of plaintiff's car or in plaintiff's arrest and subsequent prosecution.
Plaintiff's notice of appeal indicates he has appealed from the dismissal of his claims against these defendants; however, plaintiff has not addressed the liability of these defendants in his brief. Plaintiff has, therefore, waived the issue on appeal. We. affirm the District Court's -dismissal of the claims against these defendants for the further reason that plaintiff failed to introduce any evidence that Claiborne, Trentham or Fortner were involved in the search, arrest, or prosecution at issue.
Accordingly, when referring to defendants in the balance of this opinion, we refer to defendants Thornburg, Slagle, and Line.

. Defendants do not appeal from the remand order; thus, plaintiff has viable claims for assault ’ and battery pending in state court.

. The District Court ruled that plaintiff's complaint did not sufficiently plead a federal excessive force claim and plaintiff has not appealed from that determination.

. In addition to his claim for false arrest, plaintiff brings a claim for false imprisonment for the imprisonment incidental to the arrest.

. Plaintiff contends that he yelled out to the individual in his car while he was running towards it; however, Officer Thornburg testified that he did not hear plaintiff yell anything to him.

. Because we conclude that there was probable cause to arrest plaintiff and thus no false arrest, plaintiffs claim of false imprisonment was properly dismissed as well.

. The dissent contends that the record reveals Smith did not avail himself of a full adversary proceeding. Quite to the contrary, the record establishes that Smith's counsel arrived at the preliminary hearing ready to try the case. During a discussion on July 1, 1994, between Smith’s counsel and the prosecutor regarding whether the court would conduct a preliminary hearing or trial on that day, Smith's counsel indicated, "[w]e would offer to try the case at this point.” J.A. 195. While the parties ultimately agreed that a preliminary hearing would be held rather than a trial, Smith’s counsel framed the issue to be decided during his opening as "whether or not the State can establish probable cause that an unlawful touching of the officer occurred and to negate by probable cause the defense that Mr. Smith was acting as he reasonably believed necessary to terminate the officer’s trespass into his vehicle.” J.A. 196. While Smith’s counsel did not call all of the individuals who witnessed the events in question, Smith’s counsel did call Officer Thornburg, Smith, Smith's father, and an investigator from his office. In fact, contrary to established procedures, Smith’s counsel was permitted to recall Thornburg[1] after Thornburg and Smith’s father had testified. The court did so because Smith’s counsel asserted that recalling Thornburg "[g]oes directly to probable cause," and because the court "pretty much wanl[ed] to hear what each side ha[d] to say generally.” J.A. 208.
The dissent further contends that Smith was unable to fully and fairly litigate the probable cause issue because the court refused to hear evidence -regarding Smith's justification defense. Specifically, Smith's counsel sought to introduce evidence that Smith, while running toward his car, yelled, “hey, hey what are you doing.” The record reveals, however, that the court did not consider this evidence purporting to support the defense because Smith’s counsel failed to apprise the court of the evidence until the judge an *1078 nounced and. explained his decision. Under these circumstances, the court properly declined to hear evidence that was not introduced through an examination of a witness. Furthermore, while the dissent asserts the court admitted that the evidence was "very important" to the proceedings, our reading of the exchange between the court and Smith’s counsel suggests that the court was merely attempting to explain to Smith’s counsel that it was very important to introduce the evidence through a witness, rather than simply bringing it to the court's attention when the court was issuing its decision, in. order that the witness from whom the testimony was elicited could be cross-examined.
We, therefore, disagree with the dissent’s contention that. Smith did not have a full and fair opportunily to litigate the probable cause issue at his preliminary hearing.

. There is no evidence they were uttered by Thornburg, Slagle or Line.

. In view of our disposition of plaintiff's case against the individual defendants, we need not address the liability of the City of Knoxville. See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986)(a claim against a municipality for inadequate training and supervision under § 1983 cannot be maintained where there has' been no constitutional violation by the persons supervised).

. The majority correctly asserts that Plaintiff has waived the issue of Defendants Claiborne’s, Trentham’s, and Fortner's liability; in addition, Plaintiff has failed to introduce any evidence that these Defendants were involved in the search, arrest, or prosecution at issue. Accordingly,' the term “Defendants’’ within this opinion refers only to Defendants Thornburg, Slagle, and Line.