**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JERRY YOUNG,

> *Plaintiff-Appellant,*

v.

PRINCE GEORGE'S COUNTY, MAYLAND;
R. A. HINES, Officer, individually
and as a Prince George's County
police officer,

> *Defendants-Appellees.*

No. 02-7735

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-01-827-PJM)

Argued: September 23, 2003

Decided: January 22, 2004

Before LUTTIG, MICHAEL, and GREGORY, Circuit Judges.

---

Affirmed in part, vacated and remanded in part by published opinion.
Judge Gregory wrote the opinion, in which Judge Luttig and Judge
Michael joined.

---

## COUNSEL

**ARGUED:** Jeannett Palacios Henry, LAW OFFICE OF DONALD
M. TEMPLE, Washington, D.C., for Appellant. Jay Heyward Creech,
Upper Marlboro, Maryland, for Appellees. **ON BRIEF:** Donald M.

Temple, LAW OFFICE OF DONALD M. TEMPLE, Washington, D.C., for Appellant.

---

**OPINION**

GREGORY, Circuit Judge:

Plaintiff-appellant Jerry Young appeals from the judgment of the United States District Court for the District of Maryland granting summary judgment to defendants-appellees Prince George's County and Officer R. A. Hines on plaintiff's unlawful arrest and excessive force claims brought under 42 U.S.C. § 1983 and state law battery claim. On appeal, Young argues that summary judgment should not have been granted on his unlawful arrest claim because the methods of restraint utilized by Officer Hines turned the investigatory stop to which he was subjected into an unlawful arrest. Young also argues that summary judgment was improperly granted on his excessive force claim because the level of force used by Officer Hines was unreasonable under the totality of the circumstances. Moreover, Young asserts that in granting summary judgment on his Fourth Amendment excessive force claim the district court applied the wrong legal standard. Specifically, Young contends that the district court incorrectly reviewed his excessive force claim under the Fourteenth Amendment's subjective standard rather than the Fourth Amendment's "objective reasonableness" standard. Lastly, Young argues that summary judgment should not have been granted on his state law battery claim because Officer Hines's use of excessive force constitutes battery under Maryland law. We hold that the district court did not err by granting summary judgment on Young's unlawful arrest claim. We also hold that genuine issues of material fact exist as to whether Officer Hines used excessive force when, after handcuffing Young behind his back, he forcefully threw Young head-first to the ground and proceeded to strike Young in the back of head with his forearm and pound his knee into Young's back. Given that there is question as to whether Officer Hines used excessive force, Young's state law battery claim cannot be properly adjudicated until such a determination is made. We therefore vacate these portions of the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

I.

On the evening of July 19, 1999, Young, an African American off-duty FBI agent,[1] was driving his Ford Bronco on Columbia Park Road and East Marlboro Avenue in Landover, Maryland, which is located in Prince George's County. Attached to the rear of Young's automobile was a trailer that was being used to tow his neighbor's, Mr. Pringle, disabled vehicle. As Young towed his neighbor's vehicle, Officer Hines, a Caucasian officer, observed that the trailer attached to the rear of Young's automobile lacked operable tail-lights as required under Maryland's transit code. Md. Code Ann., Transp. § 22-204 (requiring that "every motor vehicle [and] trailer . . . being drawn at the end of a combination of vehicles . . . be equipped with at least 2 tail lamps mounted on the rear which, when lighted . . . shall emit a red light plainly visible from a distance of 1,000 feet to the rear"); *see also id.* § 22-201.1 (mandating that tail-lights be illuminated after dark). Based upon this observation, Officer Hines stopped Young's automobile.

After being stopped, Young and Pringle exited their vehicle without being prompted by Officer Hines. Although Pringle remained near the vehicle, Young approached Officer Hines to ascertain the basis for the stop. In response, Officer Hines instructed Young and Pringle to sit down on the curb and place their hands on their heads. Both Young and Pringle complied with Officer Hines's instructions. As Officer Hines began to approach Young and Pringle, Young voluntarily informed Officer Hines that he was an off-duty law enforcement officer and that he was armed. Young further informed Officer Hines that his law enforcement credentials were located in his automobile.

In response to Young's statement that he was armed, Officer Hines approached and handcuffed Young behind his back in order to prevent him from gaining access to his firearm. After handcuffing Young, Officer Hines "stood behind [him], suddenly grabbed him by his neck, placed him in a headlock, spun him around toward the

---

[1]As of the date of the stop in question, Young had served as a law enforcement officer for twenty years. During this time, Young served as an officer in the National Park Service, a Deputy United States Marshal and an FBI agent. J.A. 154-59.

ground and forcefully threw [his] face to the ground with nothing to abort his fall. . . . Officer Hines then forcefully placed his knee into the center of [his] back." Appellant's Brief at 4. Young maintains that the use of such force was excessive because at no point did he resist or threaten Officer Hines.

After handcuffing and throwing Young to the ground, Officer Hines proceeded to search Young. During this search, Officer Hines retrieved from Young's front pocket a .38 caliber firearm, which is not standard issue for law enforcement agencies. After retrieving Young's firearm, Officer Hines struck Young in the back of the head with his forearm. *Id.* When Young complained about the use of such force, Officer Hines responded by telling Young to "shut up" and further "pounding" his knee into Young's back. *Id.*

As a result of the force used by Officer Hines, Young suffered "a contusion, cut to his lips, bruises, lesions to his wrist, and a strained neck and back." *Id.* at 26. The injuries to Young's neck allegedly continued "months later and through the time of [his] deposition." *Id.*

After retrieving Young's firearm, Officer Hines searched for and found Young's law enforcement identification, which included his FBI badge and photo identification. In conducting an initial inspection, however, Officer Hines was unable to confirm the authenticity of Young's FBI identification. Consequently, Officer Hines instructed the back up officers who arrived on the scene to inspect Young's identification. These officers were also unable to verify the authenticity of Young's FBI identification. As a result, Officer Hines contacted the FBI, through a number provided by Young, and confirmed Young's status as an FBI agent. Having received such confirmation, Officer Hines released Young. Officer Hines's detention of Young lasted less than twenty-five minutes.

## II.

On March 19, 2001, Young commenced the present action against Prince George's County and Officer Hines in the United States District Court for the District of Maryland. In doing so, Young alleged that Officer Hines subjected him to an unlawful arrest and used excessive force in violation of 42 U.S.C. § 1983 and the Fourth, Fifth and

Fourteenth Amendments. Young further alleged that Officer Hines discriminated against him on the basis of race in violation of 42 U.S.C. § 1981. Lastly, Young alleged that the force used by Officer Hines constituted battery under Maryland law.

On October 15, 2002, the district court granted defendants summary judgment on all claims asserted by Young, holding that the force used by Officer Hines and the length of Young's detention were reasonable in light of the fact that Young was armed. J.A. 298-300. The district court further held that Young failed to adduce any facts to support his claim that he was discriminated against on the basis of race or to establish the malice necessary to overcome the qualified immunity conferred upon law enforcement officers under Maryland law. *Id.* at 300-01. This appeal followed.

On appeal, Young challenges the district court's grant of summary judgment on his unlawful arrest, excessive force and state law battery claims.

## III.

"We review a district court's award of summary judgement *de novo*." *Continental Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 508 (4th Cir. 2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon such a showing, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In satisfying this burden, the nonmoving party must support the asserted claims with evidence that is significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, "'[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984)(quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627,

632 (E.D.N.C. 1966)). The nonmoving party's failure to set forth such evidence renders summary judgment appropriate.

### A.

Young argues that the district court erred by granting summary judgment on his unlawful arrest claim because Officer Hines's use of excessive force escalated the investigatory stop to an unlawful arrest. We disagree.

We have held that "[a] *Terry* or investigative stop can cross the line and turn into an arrest . . . [if], under the totality of the circumstances, the 'suspect's freedom of action is curtailed to a degree associated with formal arrest.'" *Park v. Shiflett*, 250 F.3d 843, 850 (4th Cir. 2001)(quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). This test reflects our attempt to strike a delicate balance between "'the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law,'" *id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 88 (1968)), and "the needs of law enforcement officers who constantly place themselves in harm's way." *Id.*

In an effort to strike this balance, we have held that "[b]rief, even if complete, deprivations of a suspect's liberty do not convert a stop and frisk into an arrest *so long as the methods of restraint used are reasonable to the circumstances*." *United States v. Crittendon*, 883 F.2d 326, 329 (1989)(emphasis added). As a result, this Court has concluded that police officers may block an automobile and draw their weapons when confronted with a situation in which they have been informed that a passenger fears for his personal safety. *United States v. Perate*, 719 F.2d 706, 709 (1983). We have also held that an officer may handcuff a suspect when "'reasonably necessary to maintain the status quo and protect [officer] safety during an investigative stop.'" *Crittendon*, 883 F.2d at 329 (quoting *United States v. Taylor*, 857 F.2d 210, 213 (4th Cir. 1988)).

### B.

Under the totality of the circumstances presented, we hold that the methods of restraint used by Officer Hines did not cross the line

between a stop and an arrest. As the Supreme Court has noted: "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 386-87 (1989). In the present case, Officer Hines stopped an automobile carrying two passengers, one of whom admitted he was armed. Given the fact that Young was armed, Officer Hines was entitled to protect his safety by taking reasonable measures designed to disarm Young. We therefore conclude that it was reasonable for Officer Hines to handcuff Young behind his back. *Crittendon*, 883 F.2d at 329.

We further conclude that Officer Hines's decision to take Young, who was still armed, down to the ground did not have the effect of turning the investigatory stop to which Young was subjected into an unlawful arrest. Young's detention was not unnecessarily prolonged by the fact that Officer Hines forced him down to the ground. The total amount of time that it took Officer Hines to stop, search, disarm and verify Young's identification was under twenty-five minutes. Given the necessity of all these steps, we do not believe Young's detention was unreasonably prolonged. *See United States v. Sharpe*, 470 U.S. 675, 686 (1985)(noting that in determining the reasonableness of a stop "it [is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicion quickly, during which time it was necessary to detain the [suspect]"); *see also United States v. Alpert*, 816 F.2d 958, 964 (4th Cir. 1987)(noting that "[a]mong the circumstances which must be considered [when determining the reasonableness of a stop] are the duration of time the suspect is delayed by the stop, . . . whether the police acted diligently, . . . [and] whether the detention of the subject of the search was *unnecessarily* prolonged").

Young nonetheless argues that the stop turned into an arrest when Officer Hines threw him head-first to the ground. Young contends that such conduct on the part of Officer Hines was unnecessary because he had identified himself as an off-duty officer and was fully cooperative. These facts, however, do not compel the conclusion that the act of forcing Young down to the ground turned the stop into an arrest. Although Young may be correct in arguing that the takedown

itself and the force used by Officer Hines to effectuate the takedown constitute excessive force, we do not believe that the use of such force curtailed Young's "freedom of action to a degree associated with formal arrest." *Park*, 250 F.3d at 850. As previously noted, Young's detention lasted for less than twenty-five minutes. During this time, Officer Hines undertook the necessary steps of handcuffing, searching and disarming Young. In addition, Officer Hines took the measures required to verify Young's law enforcement credentials and upon receiving such confirmation promptly released Young. Given the necessity of all these steps and the amount of time that it took Officer Hines to complete them, we conclude that Young's detention was not unnecessarily prolonged by the takedown or the force used by Officer Hines during the takedown.

Accordingly, the district court's grant of summary judgment on Young's unlawful arrest claim was not erroneous.

IV

Young also argues that the district court erred by granting summary judgment on his excessive force claim. Young contends that the force used by Officer Hines was excessive because at no point did he resist arrest or threaten Officer Hines. We find that genuine issues of material fact exist as to the reasonableness of the force used by Officer Hines once Young was handcuffed. Therefore, summary judgment should not have been granted on Young's excessive force claim.

A.

Under the Supreme Court's ruling in *Graham v. Connor*, we must review Young's excessive force claim under the Fourth Amendment and its "objective reasonableness" standard. 490 U.S. at 395 (holding that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). As the Court stated in *Graham*, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the counter-

vailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)(internal quotation marks omitted)). Because such a test does not lend itself to a bright line rule, we must take into consideration the "totality of the circumstances" when assessing the reasonableness of force used by an officer. *Garner*, 471 U.S. at 8-9. In doing so, we view the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

### B.

After considering the totality of the circumstances, we hold that Officer Hines reasonably sought to limit Young's access to his firearm by handcuffing him. We cannot, however, conclude as a matter of law that the force used by Officer Hines subsequent to Young's being handcuffed was reasonable.

Officer Hines was confronted with a situation in which he pulled over two suspects for a minor traffic violation, namely the failure to have an operable trailer tail-light. Upon being stopped by Officer Hines, both Young and Pringle were fully cooperative. They promptly sat down on the curb and placed their hands on their heads when asked to do so by Officer Hines. Indeed, Young sought to assist and put Officer Hines at ease by immediately volunteering that he himself was a law enforcement officer, that his law enforcement credentials were in his automobile and that he was carrying a firearm. Given the cooperation of Young and Pringle, it is not readily apparent why Officer Hines, after handcuffing Young and Pringle, needed to grab Young from behind, place him in a headlock, spin him around and throw him head-first to the ground. Once Young and Pringle were both handcuffed, Officer Hines could have easily disarmed Young, who at no point resisted, without the use of such force. Even more questionable is Officer Hines's use of force once Young was lying face-down on the ground, handcuffed behind his back and disarmed. At this point, Young presumably posed little, if no, threat to Officer Hines. Nonetheless, Officer Hines proceeded to strike Young in the back of the head with his forearm and pound his knee into the center of Young's back. When Young complained about the use of such force, Officer Hines responded by telling Young to "shut up" and further pounding his knee into Young's back.

Defendants argue that the use of such force was reasonable because Young was armed. The fact that a suspect is armed, however, does not render all force used by an officer reasonable. The measures taken by an officer to disarm a suspect must be reasonable under the totality of the circumstances.[2] Here, Young was stopped for a minor traffic violation, was completely cooperative and posed little, if no, threat once he was handcuffed behind his back. *Graham*, 490 U.S. at 396 (noting that among the factors to be considered under the Fourth Amendment's "objective reasonableness" standard are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). When viewed in this light, we believe that a reasonable jury could find excessive the force used by Officer Hines once Young was handcuffed.

Based on the foregoing, the district court's grant of summary judgment on Young's excessive force claim was erroneous.

## C.

On remand, Young's excessive force claim should be reviewed under the Fourth Amendment's "objective reasonableness" standard rather than the subjective standard used to adjudicate excessive force claims brought under the Due Process Clause of the Fourteenth

---

[2]Indeed, it may have been more reasonable and prudent for Officer Hines to instruct Young and Pringle to lie face-down on the ground rather than forcefully taking Young down. By opting for this less confrontational course of action, Officer Hines would have still been able to accomplish his goal of immobilizing both suspects while remaining in a position that allowed him to easily observe and react to each suspect's conduct. Moreover, Officer Hines would have limited the possibility that this traffic stop, which was routine in every aspect except one, would escalate into a situation where he or one of the suspects suffered serious or deadly bodily harm.

Of course, the relevant inquiry is not whether Officer Hines choose the most reasonable course of action, but rather whether his conduct was objectively reasonable under the totality of the circumstances. Nonetheless, the availability of other reasonable, or even more reasonable, options is not completely irrelevant to our inquiry.

Amendment. As we have expressly held: "The Fourth Amendment governs claims of excessive force during the course of an arrest, *investigatory stop*, or other 'seizure' of a person." *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997)(*en banc*)(emphasis added). In granting summary judgment, however, the district court erroneously concluded that "[t]o prevail on an excessive force claim, [Young] must show that the officer 'inflicted unnecessary and wanton pain and suffering.'" J.A. 299. (quoting *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998)). As a result of this erroneous conclusion, the district court held that Young's injuries were *de minimis* and thus not constitutionally cognizable.[3] In support of its holding, the district court cited and quoted our holding in *Taylor v. McDuffie*. The district court's reliance on *Taylor*, however, is misplaced. In *Taylor*, we held that "the excessive force claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment." 155 F.3d at 483 (quoting *Riley*, 115 F.3d at 1166). Accordingly, we stated that "[t]o succeed on a claim of excessive force under the Due Process Clause of the Fourteenth Amendment, [a pretrial detainee] must show that [a] Defendant[] 'inflicted unnecessary and wanton pain and suffering.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Given that Young was not a pretrial detainee, our holding in *Taylor* is inapplicable. If Young were a pretrial detainee there would be no question as to whether he was arrested.

Under the Fourth Amendment's "objective reasonableness" standard, the "subjective motivation[] of [an] . . . officer[] . . . has no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment." *Connor*, 490 U.S. at 397; *see also Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)(stating that under the Fourth Amendment's "objective reasonableness" standard "[w]e do not con-

---

[3]Taking the facts in the light most favorable to Young, we conclude that Young's injuries are not *de minimis*. Due to the force used by Officer Hines , Young sustained "a contusion, cut to his lips, bruises, lesions to his wrist, and a strained neck and back." J.A. 26. Moreover, the injuries to Young's neck are alleged to have continued for almost two and a half years after the events of the night in question. We believe that such injuries, when taken in the light most favorable to the nonmoving party, exceed the type of trivial "push and shove" that the Supreme Court has held to be uncognizable. *Graham*, 490 U.S. at 397.

sider the officer's 'intent or motivation'"); *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996)(stating that under the Fourth Amendment's "objective reasonableness" standard "[t]he intent or motivation of the officer is irrelevant"). Accordingly, Young need not make any showings as to Officer Hines's subjective intent to succeed on his Fourth Amendment excessive force claim.

## V.

Given that summary judgment should not have been granted on Young's excessive force claim, we also hold that the district court's grant of summary judgment on Young's state law battery claim was erroneous.

Under Maryland law, "[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999). Although Maryland police officers are entitled to qualified immunity when performing their official duties, they lose such protection when they commit "an intentional tort or act[] with malice." *DiPino v. Davis*, 729 A.2d 354, 370 (Md. 1999).

Given that Officer Hines's use of force subsequent to Young's being handcuffed was intentional, the intent element under Maryland law is satisfied. Consequently, the only unresolved issue is whether such intentional contact was lawful. This issue, however, cannot be resolved until a determination is made as to whether Officer Hines used excessive force when, after handcuffing Young, he threw Young head-first to the ground, struck Young in the back of the head with his forearm and drove his knee multiple times into Young's back.

## VI.

We affirm the district court's grant of summary judgment on Young's unlawful arrest claim. Because genuine issues of material fact exist with respect to Young's excessive force claim, the district court's grant of summary judgment is vacated and remanded for proceedings consistent with this opinion. On remand, Young's excessive force claim should be reviewed under the Fourth Amendment's "ob-

jective reasonableness" standard. Given that Young's state law battery claim cannot be properly adjudicated until a determination is made as to whether Officer Hines used excessive force, the district court's grant of summary judgment on Young's battery claim is also vacated and remanded for further proceedings.

*AFFIRMED IN PART, VACATED*
*AND REMANDED IN PART.*