**Joseph DAVIS and Susan Davis, Plaintiffs,**

v.

**Michael BROUILLETTE, Mark Stupik, and Unnamed Law Enforcement Officers, Defendants.**

No. 2:03–CV–175.

United States District Court, D. Vermont.

Nov. 18, 2004.

---

Devin McLaughlin, Esq., Middlebury, VT, for Plaintiff.

Janet C. Murnane, Esq., Burlington, VT, for Defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Joseph Davis ("Davis") and Susan Davis bring this action against Officers Michael Brouillette ("Brouillette") and Mark Stupik ("Stupik") and unnamed law enforcement officers from the Winooski Police Department ("WPD") and Colchester Police Department ("CPD"). Davis alleges that the officers used excessive force when he was taken into protective custody at a crime scene on November 5, 2001. Davis brings his claims under 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment to the United States Constitution. Susan Davis claims that she has suffered a loss of consortium due to the defendants' actions. Defendants Brouillette and Stupik have filed a joint motion for summary judgment (Doc. 37). For the reasons that follow, this motion is GRANTED as to Brouillette and DENIED as to Stupik.

## Factual Background

Because this case is now before the Court on the defendants' motion for summary judgment, the following facts are undisputed or construed in the light most favorable to the plaintiffs.

On November 5, 2001, at approximately 5:30 a.m., Davis arrived at the Frank W. Whitcomb Rock Quarry site ("quarry") located in Colchester, Vermont, to deliver a load of liquid asphalt to that site. Pl.'s Answers to Defs.' Reqs. to Admit ¶ 1–2 (Doc. 39, Ex. A) (hereinafter "Pl.'s Answers"). Davis was seated in his truck making log entries when he heard a sound that he thought might have been a gunshot. Id. ¶ 4. Davis got out of his truck and looked around. Id. ¶ 5. In the early morning dark, Davis saw a man armed with a rifle standing over a man lying on the ground. Id. ¶ 6–7. From close proximity, perhaps about 30 feet, Davis then saw the armed man shoot the man on the ground in the chest and kick him in the face. Id. ¶ 9.

It was later determined that Davis had witnessed the murder of Kevin Moulton by Darrell Bruce. Mr. Bruce has already been convicted of this homicide.

After witnessing the murder, Davis ran back to his truck, grabbed his cell phone and ran away from the area where the killing had occurred. Id. ¶ 12. Davis ran to an elevated part of the quarry where sand and gravel is stored in bins. Id. ¶ 13. Davis then called 911. Id. ¶ 14. Davis remained connected to the 911 staff person and police dispatch until police arrived at the scene and asked him to drop the phone. Id.

Police officers arrived at the quarry a few minutes after Davis made the 911 call.

*Id.* ¶ 15. Davis, who was holding only his cell phone, heard an officer tell him to "put down the fucking gun." *Id.* ¶ 16–17. As Davis was not actually holding a gun, he didn't immediately react to this directive. *Id.* ¶ 21. When he realized that the police were referring to his phone, however, he immediately dropped his phone. *Id.* ¶ 22. Apart from this brief hesitation before dropping his phone, Davis was totally compliant with all police demands.

Police officers, who had their guns pointed at Davis, ordered him to come down from the sand bins to the area where they were located. *Id.* ¶ 18–19. When he reached that area, Davis was ordered to get down on the ground and he immediately complied. *Id.* ¶ 23, 29. Brouillette approached Davis' right side and placed Davis' right arm behind his back and placed a handcuff on his right wrist. *Id.* ¶ 30. Stupik approached Davis' left side and placed Davis' left arm behind his back and secured the handcuffs. *Id.* ¶ 31, 35. As he was lying on the ground, Davis was unable to see the officers who handcuffed him. *Id.* ¶ 34.

The only significant factual dispute about the events of November 5, 2001, concerns the actions of Brouillette and Stupik as they handcuffed Davis. Davis claims that Brouillette placed his knee on his shoulder as he handcuffed his right wrist. Davis Dep. at 37:13–38:3 (Doc. 43, Ex. A). In contrast, Brouillette claims that he did not place his knees or shins on Davis' body during the handcuffing procedure. Brouillette Dep. at 12:21–25 (Doc. 39, Ex. F).

Stupik claims that, while he handcuffed Davis' left wrist, he maintained his weight on the balls of his feet and placed his left knee/shin on Davis' left shoulder and his right knee/shin on the side of Davis' rib case. Stupik Dep. at 10–13 (Doc. 43, Ex. C). Stupik testified that he did not place

any substantial weight upon Davis and he would not expect his actions to cause pain. *Id.* at 27. Davis stated that Stupik "pounced right on the lower part of my back, and it took the wind right out of me." Davis Dep. at 38:21–22 (Doc. 43, Ex. A). Davis' version of events is that Stupik landed with significant force right in the middle of his back. *Id.* at 38–40.

After Davis was handcuffed, Brouillette and Stupik helped him to a standing position. Pl.'s Answers ¶ 38. Stupik took Davis behind a building where they took cover for several minutes. *Id.* at ¶ 39. After about 10 to 15 minutes, CPD Sergeant Allen arrived and told Stupik that Davis was a witness and his handcuffs could be taken off. *Id.* at ¶ 41–42. While he was in handcuffs, Davis did not indicate to Stupik that he was in pain or had been injured. *Id.* at ¶ 44.

Davis was taken to the CPD where he gave a taped statement about what he had seen at the quarry. *Id.* at ¶ 45–46. On November 5, 2001, Davis did not inform any police officer that he had been injured while he was handcuffed. *Id.* at ¶ 48.

After this incident, Davis continued to work as an independent trucker. *Id.* at ¶ 49. In January 2002, Davis' back "gave out" while he was entering his truck. *Id.* at ¶ 52. Davis alleges that this was due to the injury sustained on November 5, 2001. *Id.* Davis first sought treatment for this injury after his back gave out in January 2002. Davis has been diagnosed as suffering from a congenital condition in his back that preexisted the incident on November 5, 2001. *Id.* at ¶ 54.

Davis has submitted deposition testimony and a medical report from Dr. Valmore Pelletier. Dr. Pelletier testified that Davis' injury is consistent with the type of force that Davis says was applied to him. Pelletier Dep. at 38:9–14 (Doc. 43, Ex. F).

Dr. Pelletier suggested that the injury was caused by a hyperextension of Davis' lower back. *Id.* at 41:15–20. Moreover, Davis' injury was located at the L4 and L5 vertebrae which is where he claims Stupik put his knee. *Id.* at 39:2–6.

Davis filed the instant lawsuit in Chittenden Superior Court in Vermont on June 4, 2003, and the defendants removed the case to this Court on June 20, 2003. Brouillette and Stupik now move for summary judgment on all of the plaintiffs' claims. Brouillette and Stupik assert that they are entitled to qualified immunity on Davis' claim of excessive force.

### Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue as to any material fact and the moving party has shown that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC,* 293 F.3d 550, 554 (2d Cir.2002). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of coming forward with those parts of the record it feels demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### Discussion

All claims that "law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Here, Davis claims that officers used excessive force when they placed him in protective custody. Thus, his claim is properly analyzed under the Fourth Amendment.

Analysis of an excessive force claim against law enforcement officers involves two steps. First, the court must consider whether the officers' conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If no constitutional right was violated, there is no need for further inquiries concerning qualified immunity. *Id.* If a constitutional violation occurred, however, the court must conduct a qualified immunity analysis. The court must consider whether the officer could have reasonably, but mistakenly, believed that his conduct did not violate a clearly established right. *See id.* at 201–202, 121 S.Ct. 2151. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. As this is a motion for summary judgment, the Court must base each step of this analysis on the facts taken in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In considering the first step of *Saucier's* inquiry, the Court must determine whether Davis' constitutional right to be free from excessive force was violated. The Court must ask if the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham,* 490 U.S. at 397, 109 S.Ct. 1865; *Mickle v. Morin,* 297 F.3d 114, 120 (2d Cir.2002). Determining

whether the force used in making an arrest is excessive or reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *see also Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir.2000). Courts must be mindful of the fact that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865.

▪ A number of uncontested facts support the use of some force in this case. First, the crime at issue, murder, was extremely serious. Second, the officers, who had no description to enable them to distinguish the witness Davis from the perpetrator Darrell Bruce, had a reasonable basis to believe that Davis posed a threat. These facts support the officers' decision to take Davis into custody.[1] Moreover, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396, 109 S.Ct. 1865.

Davis notes that he was not actively evading or resisting arrest when he was placed in handcuffs. Davis' brief confusion and hesitation before he dropped his cell phone was his only failure to comply completely with police demands. These factors favor Davis.

Considering the uncontested facts, the Court finds for Brouillette at the first step of the *Saucier* analysis. Even if Davis' version of the incident is taken as true,

Brouillette's actions were reasonable in light of the circumstances. Davis claims that Brouillette placed his knee over the top of his back and shoulder area as he was handcuffed. Davis does not claim that this caused him pain or that Brouillette placed significant weight on his back. Moreover, Davis does not link his injury to Brouillette's actions. Dr. Pelletier's testimony does not suggest that Davis' injury could have been caused by the placement of a knee, without significant force, at the shoulder area. Pelletier Dep. at 41:5–20 (Doc. 43, Ex. F). Rather, Dr. Pelletier testified that Davis' injury was caused by a hyperextension of the lower back. *Id.*

Brouillette finds support in *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001). In that case, the court found no Fourth Amendment violation where an officer had placed his knee on the back of the plaintiff even though the plaintiff had not been actively resisting arrest. *See id.* at 650–53. In *Jackson*, there was no showing that the officer had placed his knee with significant force or that the officer had caused injury to the plaintiff's back. *See id.* at 650. Similarly, Davis has not presented evidence suggesting that Brouillette placed significant weight on his back or caused injury. Considering the seriousness of the circumstances facing the officers as they responded to a report of a homicide, Brouillette's actions appear reasonable.

Finally, Brouillette did not aide any alleged misconduct by Stupik. It is standard practice for one officer to secure an arm before the second officer attempts to secure the other arm. Stupik Dep. at 12:10–17 (Doc. 43, Ex. C). So, even if Stupik did apply unreasonable force by "pouncing" on Davis' lower back, Brouil-

---

1. Davis does not allege false arrest.

lette acted appropriately when he secured Davis' right arm first.

The Court grants Brouillette's motion for summary judgment with respect to Davis' claim of excessive force. As Susan Davis' claim for loss of consortium arises out of the same excessive force claim, Brouillette is also entitled to summary judgment against Susan Davis.

■ The Court does not find for Stupik at the first step of the *Saucier* analysis. In contrast to Davis' allegations regarding Brouillette, Davis claims that Stupik placed significant weight on his back and caused injury.

Davis has presented the expert testimony of Dr. Pelletier in support of his claim that excessive force caused his injury. The defendants argue that Dr. Pelletier's testimony suggests that Davis' injury could have been caused by the defendants even under the defendants' version of events. Pelletier stated that Davis' injury could have resulted from the placement of a knee in the mid-back area. Pelletier Dep. at 41:9–13 (Doc. 43, Ex. F). The defendants claim that Stupik placed his knee in the mid-back area. This does not help the defendants. Stupik's testimony was that he maintained his weight on the balls of his feet and placed his knee against Davis' ribs. Stupik Dep. at 9:2–5 (Doc. 39, Ex. H). This is not the kind of blow to the back that Pelletier suggested could cause hyperextension of the lower back and lead to Davis' injury. Moreover, Davis' injury was located at the L4 and L5 vertebrae which is where Davis claims Stupik put his knee. Pelletier Dep. at 39:2–6 (Doc. 43, Ex. F). When Dr. Pelletier's testimony is considered in the light most favorable to Davis, it supports Davis' claim that his injury was caused by an act of excessive force from Stupik.

Davis claims that Stupik 'pounced' on the center of his lower back, knocking the wind out of him and causing injury. The defendants themselves have conceded that, if this were true, it would be an unreasonable use of force. *See* Stupik Dep. at 26:14–17 (Doc. 43, Ex. C); Brouillette Dep. at 16:19–17:3 (Doc. 43, Ex. B).

Having found that, according to Davis' version of events, Stupik's actions violated the Fourth Amendment, the Court must consider whether Stupik is entitled to qualified immunity. The relevant question is whether an officer's mistake about the legality of his conduct was reasonable. "An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151.

■ To defeat qualified immunity, the plaintiff can point to specific case law that would place the officer on notice that his actions are illegal. *See id.* at 202–203, 121 S.Ct. 2151. However, the plaintiff does not have to show that courts have "agreed upon the precise formulation of the standard." *Id.* at 202, 121 S.Ct. 2151. Thus, the plaintiff can overcome qualified immunity even if courts have not addressed the exact action in question. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Deorle v. Rutherford,* 272 F.3d 1272, 1285–86 (9th Cir.2001). All that is required is that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

Davis has not pointed to any case law directly addressing the exact type of force alleged in this case. Davis cites *Donovan*

*v. Thames,* 105 F.3d 291 (6th Cir.1997). In that case, the court denied summary judgment on the basis of qualified immunity where an officer had thrown an arrestee into a chair and kneed him in the back. *See id.* at 292, 297. Davis also cites *Young v. Prince George's County, Md.,* 355 F.3d 751 (4th Cir.2004). In that case, the court found that allegations that an officer struck an arrestee in the back of the head with his forearm and pounded his knee in the arrestee's back raised a jury question. *See id.* at 757–58. Both of these cases can be distinguished from Davis' claim as they involved serious allegations in addition to the blow to the arrestee's back. Moreover, in *Young,* the plaintiff had already been handcuffed when he was kneed in the back. *See* 355 F.3d at 757. Similarly, as Davis correctly notes, none of the cases cited by the defendants squarely present the fact pattern where an officer kneed a prone, compliant arrestee in the lower back, knocking the wind out of him, and causing injury.

*LaLonde v. County of Riverside,* 204 F.3d 947 (9th Cir.2000) considers the most closely analogous fact pattern. In *LaLonde,* the plaintiff alleged that an officer forcefully put his knee into his back during handcuffing, causing him significant pain. 204 F.3d at 952. The plaintiff alleged that he was not resisting arrest when the officer kneed him and that this blow caused injury to his back. *See id.* at 959 n. 17. The court specifically addressed the issue of whether the officer had used excessive force by kneeing the plaintiff forcefully in the back and the court held that this allegation raised a jury question. *See id.* at 959.

The best support for Davis' claim comes from the deposition testimony of the defendants themselves. Stupik agreed when asked "if someone pounced on [Davis'] lower back with their knee, that would be excessive force as far as you understand it to be?" Stupik Dep. at 26:14–17 (Doc. 43, Ex. C). Brouillette agreed with a similar suggestion. Brouillette Dep. at 16:19–17:3 (Doc. 43, Ex. B). The defendants' own use of force expert agreed that if "one of the officers went ahead and intentionally pounced on his lower back with a knee ... that would be unreasonable." Timothy Bombardier Dep. at 33:21–25 (Doc. 43, Ex. I). This testimony strongly suggests that a reasonable officer would realize that Stupik's actions, as described by Davis, amounted to excessive force.

Summary judgment on the basis of qualified immunity is appropriate when the only conclusion a rational jury could reach is that reasonably competent police officers could, under the circumstances, disagree about the legality of the defendant-officer's conduct. *See Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995). The officers' own testimony shows that a rational jury could find that reasonably competent police officers would agree that Stupik's alleged conduct was illegal. Thus, Stupik is not entitled to summary judgment on the basis of qualified immunity.

The factual dispute in this case is very narrow. The only material fact in dispute is whether or not Stupik forcefully kneed Davis in the lower back. Although Davis could not see the officers when they placed him in handcuffs, he has testified that he was kneed forcefully by the officer who approached his left side. The parties agree that Stupik was the officer who approached Davis' left side. Davis has presented no evidence showing that any other officer, named or unnamed, committed a constitutional violation. Therefore, Stupik is the only officer who can remain as a defendant in this case.

## Conclusion

For the foregoing reasons, the Court GRANTS summary judgment in favor of

Michael Brouillette with respect to all of the plaintiffs' claims. Mark Stupik's motion for summary judgment is DENIED.